ENOCH BURROWS *vs.* HENRY W. TAFT, Executor.

County commissioners laid out a road over land owned by A., B. and C., as tenants in common, estimated their damages at $108, and ordered that sum to be paid to them from the county treasury: A. and B. drew an order on the county treasurer, directing him to pay to K., who was their agent, " whatever amount was allowed to them " by the commissioners, as damages done to their lands: K.

presented the order, received $108, gave a receipt therefor to the treasurer, as for damages allowed to A., B. and C., and paid the money to A. and B, before C. claimed of him any part thereof: C. sued K.'s executor, in an action for money had and received, to recover his portion of the $108. *Held*, that the action could not be maintained; that if A. and B. had not authority to demand and receive the whole sum of the treasurer, or if their order was not for the whole sum, yet they, by receiving the whole sum from K., had ratified his act in taking it from the treasurer; and that K's payment to them discharged him from any liability to C.

ASSUMPSIT for money had and received by Robbins Kellogg, the defendant's testator. The defendant filed the following specifications of defence : " 1st. If the plaintiff proves that said Kellogg ever received any money to which the plaintiff was in any manner entitled, the defendant will show it was money which belonged to the plaintiff jointly with H. B. & C. B. Boynton, the plaintiff's partners and cotenants, and that the same has been paid over to them. 2d. If the said Kellogg ever received any money to which the said Burrows was in any manner entitled, the defendant will show that he received it as agent of third persons, to wit, of Henry B. and Charles B. Boynton, and before his decease he paid it to his principals."

At the trial in the court of common pleas, before *Wells*, C. J. it was proved or admitted that the plaintiff and Henry B. Boynton and Charles B. Boynton, in 1840, were seized of a tract of land in West Stockbridge, as tenants in common, the plaintiff owning one undivided half thereof, and the said Boyntons the other half; that a road was laid out over said land, in 1840, by the county commissioners, who allowed to said owners (naming the three) the sum of $108 as damages, to be paid out of the county treasury ; and that this allowance was entered upon the county treasurer's book, in the roll of accounts, as follows : " Charles B. Boynton, Enoch Burrows, Henry B. Boynton, $108."

The plaintiff gave in evidence the following order and receipt: " West Stockbridge, Nov. 6, 1840. Treasurer of the county of Berkshire. Pay to Robbins Kellogg, Esq. whatever amount was allowed to us, by the county commissioners, as damages done to the lands of Boyntons by the

alteration of the road at the Sweet Hill, so called, in West Stockbridge.        Henry B. and Charles B. Boynton."

"Received, Nov. 6, 1840, of Jos. Tucker, Esq. Co. Treasurer, on this order, one hundred and eight dollars, that sum having been allowed by the county to the within named Boyntons and Enoch Burrows.        Robbins Kellogg."

The plaintiff then read the deposition of Charles B. Boynton, who deposed, (among other things,) that he and Henry B. Boynton and the plaintiff, in 1840, and before and after, were partners, carrying on "the marble business" in West Stockbridge; that the land over which a road was laid out, in 1840, and "for which the damages were awarded, was used in connexion with the partnership;" that the deponent drew and signed the order on the county treasurer for said damages, and that Kellogg, as an act of courtesy, obtained the money, and paid it to the deponent, as one of the partners.

The defendant contended that the action could not be maintained upon this evidence. But the court ruled, that "inasmuch as the order was in the name of Henry B. Boynton and Charles B. Boynton, and for their proportion of the money, and nothing more, it did not authorize the defendant's testator to receive from the county treasury the proportion of the money belonging to the plaintiff; that the taking of the share of the plaintiff was an unauthorized act; that, without deciding whether the Boyntons could have taken the whole of the money from the county treasury without actual authority from the plaintiff, the act of said Boyntons, in giving said order, was a separation of the interest of the parties, and gave the plaintiff a right to deal with his share as a separate fund; that, although the taking of the share of the plaintiff from the county treasury was an unauthorized act on the part of the defendant's testator, yet the plaintiff might waive the tort, and bring his action for the money thus wrongfully taken; and the court instructed the jury to return a verdict in favor of the plaintiff." Such a verdict was returned, and the defendant alleged exceptions to said rulings and instructions.

*H. W. Taft, pro se.* If any action would lie in this case, it must be brought by the plaintiff and the Boyntons jointly. But no action will lie. Either of the three cotenants had a right to receive from the county treasury the whole sum allowed to them as damages; and payment to the Boyntons discharged the claim of the plaintiff. *Merrill* v. *Inhabitants of Berkshire,* 11 Pick. 274. *May* v. *Parker,* 12 Pick. 39. *Bradley* v. *Boynton,* 9 Shepley, 287. These cotenants were also partners, and used the land in their partnership business; so that the case is stronger than if they had been mere tenants in common. Payment to one of several partners discharges the claim of the others. *Wilson* v. *Mower,* 5 Mass. 407. *Emerson* v. *Knower,* 8 Pick. 63.

Whether the order was for the whole of the damages, or not, the Boyntons, by receiving of Kellogg the whole damages, ratified his act in receiving it from the county treasurer. *Fisher* v. *Willard,* 13 Mass. 379. 2 Greenl. on Ev. § 66.

The plaintiff, by bringing this action, has admitted that Kellogg rightfully received the money. *Eastwick* v. *Hugg,* 1 Dall. 222. And as Kellogg acted as agent, and paid over the money to his principals, without any notice of the plaintiff's claim, he was thereby discharged from all further liability. *Pond* v. *Underwood,* 2 Ld. Raym. 1210. *Sadler* v. *Evans,* 4 Bur. 1984. *Buller* v. *Harrison,* Cowp. 565. *Mowatt* v. *McClelan,* 1 Wend. 173.

There was no such privity between the plaintiff and Kellogg as would enable the plaintiff to recover, if there were no other defence. *Sims* v. *Brittain,* 4 Barn. & Adolph. 375. 2 Greenl. on Ev. § 119, Chit. Con. (5th Amer. ed.) 607 *a,* 609. Besides; as Kellogg did an act of mere gratuitous courtesy to the Boyntons, he did not subject himself to the onerous claim of the plaintiff. *Coles* v. *Wright,* 4 Taunt. 198. *Tope* v. *Hockin,* 7 Barn. & Cres. 101.

*Porter,* for the plaintiff. The defendant's testator, on an order for the "damages done to the lands of Boyntons," received the money "allowed by the county to Boyntons and Enoch Burrows." The order was not for the whole of the

damages to the land of the three, but only for the damages
to the lands of two.   By this order, the Boyntons made a
severance of their interest in the damages.   The defendant's
testator therefore received the plaintiff's portion of the dam-
ages without authority, and this action well lies to recover it
of the defendant.   *Heard* v. *Bradford,* 4 Mass. 326.   *Fair-
banks* v. *Blackington,* 9 Pick. 93.   *Hardy* v. *Peters,* 19
Pick. 370.   *Weld* v. *Oliver,* 21 Pick. 559.

The Boyntons, as partners of the plaintiff, had not a joint
interest in the land over which the road was laid out, as it
does not appear that the land was used specially for partner-
ship purposes.   Story on Part. §§ 92, 94, 98.   *Coles* v.
*Coles,* 15 Johns. 159.

In the cases cited from 4 Taunt. and 7 Barn. & Cres. the
defendants had paid over the money to the persons for whom
they received it.

*Byington* replied.

DEWEY, J.   The positions urged on behalf of the defendant,
that one of several joint creditors may discharge the entire de-
mand, and that tenants in common must join in an action to
recover damages for injuries to their estate, are well taken,
and are fully maintained by the authorities cited.   The
further proposition, that an allowance for damages occasioned
by the location of a highway must, in all cases, be made
jointly to all the tenants in common, and more particularly
that branch of this proposition, that any one of the tenants
may, against the will of his cotenants, demand and receive
the entire allowance made to all of them, will require to be
further considered, when a case arises which makes an opin-
ion upon that point necessary.   Although the allowance for
damages to such an estate be made for the whole estate, and
estimated in one entire sum, yet there would seem to be no
practical difficulty in also stating the names of the tenants in
common, the amount of the interest of each, and the propor-
tion to which he would be entitled.   Such a mode of assess-
ing damages would not conflict with any principles decided in
the case of *Merrill* v. *Inhabitants of Berkshire,* 11 Pick. 269,

although perhaps at variance with some of the remarks made in the opinion there stated. The right of tenants in common to have a jury to revise the damages awarded them by the county commissioners may well be held to be a joint and not a several right, although the commissioners, after awarding an entire sum, proceed to state the proportionate share of each cotenant.

But the strong ground of defence is this, that Kellogg, the defendant's testator, in receiving and paying over the money, acted merely as the agent of H. B. Boynton and C. B. Boynton ; that they ratified whatever he did ; and that, having received the money upon their order, and having paid over to them the entire amount thus received, without notice from the plaintiff, Kellogg was discharged from all further liability.

Was Kellogg acting as the agent of the Boyntons in this whole matter ? Taking the language of the order, it is supposed by the counsel of the plaintiff, that it was restricted to the proportionate share of the Boyntons in the sum awarded. But the order contains no such terms. It is a request to pay to Kellogg " whatever amount was allowed to us by the county commissioners, as damages done to the lands of Boyntons, by the alteration of the road," &c. As the damages were allowed in one entire sum, and as the Boyntons were interested, as tenants in common, in each and every part of the land taken, it might be plausibly argued, that this order requested the payment of the whole amount allowed as damages. But we need not consider this point, as it is a sufficient ground of defence, that upon this order, and upon the call made by this order alone, and without any evidence of any other request made by Kellogg, the county treasurer paid over the whole sum received by Kellogg, as paid in compliance with this order, and that Kellogg paid over the same money, to the whole extent thus received, to the Boyntons. It is to be remarked that the order was for no particular sum, and there was nothing in the amount paid to Kellogg that gave him notice that he was receiving a sum greater than that covered by the order of the Boyntons, or that he was to

retain any part of the sum which he so received, for any other person. It is true, that in the receipt given by Kellogg, he says it is "the sum allowed by the county to the within named Boyntons and Enoch Burrows ; " and this is the only fact which has any tendency to charge Kellogg as holding any portion of this money for the plaintiff. But this is in a good degree neutralized by the entire language of the receipt. The question, it is to be remarked, is, whether upon the face of this instrument Kellogg admits the receipt of money which he was to retain for the sole and separate use of Burrows.

The language of the receipt is, "received, Nov. 6, 1840, on this order, $108," &c., referring to the order of the Boyntons before stated. This assumes that the money was properly payable to the Boyntons. Kellogg presented their order for money, for which they might draw, and in answer to the call made by that order he was paid $108 by the county treasurer ; and this sum he immediately paid over to the Boyntons, without any notice from the plaintiff of his claim, or any request to retain a part of the same for him. Having paid over the money, under these circumstances, Kellogg was discharged from all further liability. If this money was properly drawn from the county treasury, upon the order of the Boyntons, the remedy of the plaintiff is to call upon the Boyntons for his proportionate share. If the Boyntons had no authority to draw the money from the county treasury, then no legal payment has been made by the county treasurer, and the plaintiff may enforce his claim against the county. Taking either view of the case, the defendant is not liable.

We consider the receipt of the sum of $108 by the Boyntons as a ratification of the act of Kellogg in receiving that sum upon their order, and that this constituted him their agent to that extent. And such subsequent assent obviates the objection to the supposed want of authority, on the original order, to receive the entire sum allowed as damages to all the tenants in common.

It was contended that the act of the Boyntons in drawing the order was a separation of the interest of the parties, and that the effect was to create an individual interest in the plaintiff in the balance allowed as damages, after deducting the Boyntons' proportionate share. Such a result might have followed from the drawing of an order upon the county treasurer, stating with precision that a certain proportionate share of the sum allowed for damages to the land of the Boyntons and Burrows belonged to the Boyntons, and requesting the payment of a certain precise amount, as such proportionate share of the Boyntons. Upon a payment made on such an order, it might be said that the common interest had been severed, and the proportionate share of Burrows vested in him individually. But the present case presents no such state of facts. The order was general, alluded to no proportionate share, and asked payment of no particular sum.

*New trial granted.*